UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

F&M TOOL & PLASTICS, INC.,
    Plaintiff

V.

DENNIS CONTIC, d/b/a D & S Sales,
    Defendant

CIVIL ACTION NO. 4:12-cv-40134-TSH

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

This declaratory judgment action arises in response to assertions by the Defendant Dennis Contic ("Mr. Contic") that he is entitled to indefinitely continue to represent the Plaintiff F&M Tool & Plastics, Inc. (F&M") as an independent sales representative in the sale of F&M's products. F&M initiated the present action seeking a judgment declaring that the at-will sales representative relationship between the parties terminated as of June 15, 2012, following reasonable notice by F&M Tool.[1]

F&M is a Massachusetts corporation with a principal place of business in Leominster, Massachusetts. The Defendant lives in Maryland. The Defendant has moved to dismiss this Complaint on jurisdictional grounds or, in the alternative, change venue to Maryland. As set forth more fully below, there is ample evidence of numerous and varied contacts by the Defendant with the Commonwealth of Massachusetts, including personal visits, payments, and email and telephone communications, that warrants retaining jurisdiction by this Court. This

---

[1] The notice of termination followed unsuccessful negotiations between the parties to establish a new written sales representative agreement.

Memorandum and the Affidavit of Deb Fontaine, National Sales Manager at F&M, ("Fontaine Affidavit"),[2] are filed in opposition to that Motion.

## **FACTS ESTABLISHING JURISDICTION OVER DEFENDANT**

The business relationship between Mr. Contic and F&M began in October 2006. Affidavit of Deb Fontaine ("Fontaine Affidavit"), ¶3. F&M had acquired Petwares Plus, another Massachusetts company, and Mr. Contic had been a sales representative for the prior owner of Petwares Plus for several years. Fontaine Affidavit, ¶3.

Mr. Contic was a sales representative for F&M, also a Massachusetts company, for nearly six years. On or about October 25, 2006, F&M and Mr. Contic entered into an agreement whereby Mr. Contic was to serve as an independent sales representative for F&M in return for the payment of commissions. Fontaine Affidavit, ¶4. The agreement was executed by Mr. Contic and returned to F&M in Massachusetts via facsimile. Fontaine Affidavit, ¶4.

The aforementioned agreement was for a time period running from August 1, 2006, through August 1, 2007. Fontaine Affidavit, ¶5. After August 1, 2007, F&M and Mr. Contic continued their relationship on an at-will basis, terminable by either party. Fontaine Affidavit, ¶5. Mr. Contic continued to serve as a sales representative for F&M until 2012. The original contract between F&M and Mr. Contic (dba D&S Sales) references F&M's Leominster, Massachusetts address.

During the years that Mr. Contic served as a sales representative for F&M, he had consistent and purposeful contact with Massachusetts. Fontaine Affidavit, ¶6. Specifically, Mr. Contic travelled to Massachusetts at least twice a year for F&M related business. For each visit, Mr. Contic would typically stay in Massachusetts from Monday through Thursday. Fontaine

---

[2] The Defendant does not support his Motion with any Affidavit or record evidence. This is not surprising in that any such Affidavit would reveal his many contacts with the Commonwealth of Massachusetts including regular visits, telephone and email contact as set forth below and in Ms. Fontaine's Affidavit.

Affidavit, ¶7.  Mr. Contic would participate in meetings at F&M in Leominster, Massachusetts.  Fontaine Affidavit, ¶8.  F&M's President, Mark Gasbarro, National Sales Manager, Deb Fontaine, and a marketing representative also typically attended these meetings with Mr. Contic.  The purpose of Mr. Contic's meetings at F&M in Massachusetts was to discuss Mr. Contic's F&M customer accounts and to strategize about how he could obtain new business.[3]  Fontaine Affidavit, ¶9.

In addition to Mr. Contic's regular business trips to Massachusetts, Mr. Contic also routinely communicated with F&M employees in Massachusetts by telephone.  Fontaine Affidavit, ¶11.  Mr. Contic spoke to F&M employees in Massachusetts at least two to three times a week via telephone.  He most frequently communicated with Deb Fontaine, F&M National Sales Manager and the sales manager for Mr. Contic's accounts, and with Mark Gasbarro, President of F&M.  Fontaine Affidavit, ¶11.

Mr. Contic also communicated with Deb Fontaine and other F&M employees, in Massachusetts by email on a very regular basis.  Fontaine Affidavit, ¶12.  Mr. Contic communicated with Ms. Fontaine several times per week via email.  The purpose of Mr. Contic's email communications with Ms. Fontaine, the National Sales Manager of his accounts, was to discuss those customers and accounts.  Fontaine Affidavit, ¶12.

F&M also sent monthly commission payments to Mr. Contic from Massachusetts.  Fontaine Affidavit, ¶13.  Those payments were processed and made in Massachusetts.[4]

---

[3] In addition to Mr. Contic's trips to Massachusetts for business related to his role with F&M, Mr. Contic came to Massachusetts for business related to a separate sales representative role he had with another Massachusetts company called Innovative Design.  Fontaine Affidavit, ¶10.  Innovative Design is also located in Leominster, Massachusetts.  Upon information and belief, Mr. Contic would often use his trips to Massachusetts to tend to business for both companies, and he would typically schedule meetings related to his role at Innovative Design during his visits to Massachusetts.  Fontaine Affidavit, ¶10.  Presumably, Mr. Contic also maintained regular contact with individuals at Innovative Design via telephone and email.

[4] In 2011, F&M paid Mr. Contic a total of $174,828 in commissions, and in 2012, $183,226.  Each of those monthly checks was sent from F&M in Massachusetts to Mr. Contic in Maryland.  Fontaine Affidavit, ¶13.

In the spring of 2012, F&M made several written proposals to Mr. Contic to continue that relationship. Mr. Contic rejected those proposals. All of these communications were to and from F&M representatives in Massachusetts. Fontaine Affidavit, ¶14. On or about June 11, 2012, F&M made a final proposal to Mr. Contic with an indication that the parties' relationship would terminate if the proposal was not accepted. On or about June 15, 2012, Mr. Contic rejected F&M's final proposal and the parties' relationship terminated. Fontaine Affidavit, ¶15. Despite that termination, Mr. Contic has maintained that the parties' relationship is continuing and that he has the right to continue to represent F&M in the sale of its products, apparently for an indefinite period of time. Fontaine Affidavit, ¶16.

F&M, therefore, initiated the present action in the Massachusetts Superior Court seeking a judgment declaring that the sales representative relationship between the parties terminated as of June 15, 2012. Mr. Contic removed the case to the United States District Court for the District of Massachusetts in October 2012. Mr. Contic has now filed a Motion to Dismiss the Complaint, alleging that the Court lacks personal jurisdiction, or in the alternative, that the case be transferred to the District of Maryland. The Plaintiff opposes that motion and submits this Memorandum.

## ARGUMENT

### 1. The Defendant Is Subject To Personal Jurisdiction In Massachusetts.

#### a. There Are More Than Ample Facts Sufficient To Justify The Court's Exercise Of Jurisdiction Over The Defendant.

The Defendant moves to dismiss this suit on the basis that this Court lacks personal jurisdiction over him. To determine whether a federal district court has jurisdiction over a nonresident defendant in a diversity suit, the court must look to the law of the forum state. Hahn v. Vermont Law School, 698 F.2d 48, 49 (1st Cir.1983). Under Massachusetts law, to establish

personal jurisdiction over a nonresident defendant, a plaintiff must establish, first, that the long-arm statute authorizes the assertion of jurisdiction, and, second, that the defendant has the requisite minimum contacts with Massachusetts so that the exercise of personal jurisdiction is consistent with due process requirements. Good Hope Indus., Inc. v. Ryder Scott, Co., 378 Mass. 1, 5-6 (1979).

### (i) Jurisdiction Over The Defendants Is Authorized By The Massachusetts Long-Arm Statute.

Personal jurisdiction is governed by G.L. c. 223A, § 3, the "long-arm statute," which provides in part that the Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in the Commonwealth or (b) contracting to supply services or things in the Commonwealth. . . . The facts establish that Mr. Contic transacted business in the Commonwealth as an independent sales representative for F&M and contracted with F&M to supply services or things in Massachusetts.

### A. The Defendant Transacted Business In Massachusetts.

"Transacting any business," within the meaning of the Massachusetts long-arm statute, is to be construed broadly and reaches any purposeful acts by an individual, whether personal, private, or commercial. Ross v. Ross, 371 Mass. 439, 441 (1976); Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir. 1983) (purposeful actions of law school in mailing application information to applicant in Massachusetts and acceptance letter were sufficient, without more, to constitute transacting business under broadly construed Massachusetts long-arm statute). The Supreme Judicial Court has said that a defendant's actual physical presence in the forum state is not required as a basis for jurisdiction where the defendant knowingly and purposefully engaged in transactions with plaintiffs in Massachusetts. Good Hope Industries, Inc. v. Ryder Scott Co.,

378 Mass. 1, 10 (1979). Widespread use of the telephone and mail make actual physical presence unnecessary in many cases. Id. at 11.

"The 'transacting any business' clause [in G.L. c. 223A, § 3] has been construed broadly." Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG., 26 Mass.App.Ct. 14, 17 (1988). Generally, the purposeful and successful solicitation of business from residents of the Commonwealth by a defendant will suffice to satisfy the "transacting any business" requirement. M.G.L.A. c. 223A, § 3(a); Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). In Tatro, the court held that the defendant hotel, which solicited and obtained meeting and convention business from at least ten Massachusetts businesses, and maintained telephone and mail contact with them, transacted business in the Commonwealth. The hotel entered into a contract with a Massachusetts resident, by means of a telephone contact with the plaintiff while she was in Massachusetts. The defendant's hotel reservation contract with the plaintiff constituted transacting business under the long arm statute because that contact was a part of a broader attempt to solicit business from Massachusetts. Id. at 768-96. The contacts with the plaintiff, although not themselves extensive, were not random or isolated events.

Likewise, in Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir. 1983), the defendant made purposeful efforts to reach and serve the market for legal education in Massachusetts. Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir. 1983). The United States Court of Appeals for the First Circuit concluded that the defendant law school's purposeful actions in mailing application information and acceptance letter to an applicant in Massachusetts were sufficient, without more, to constitute transacting business under broadly construed Massachusetts long-arm statute. Id. at 52. In Edwards v. Radventures, Inc., 164 F.Supp.2d 190 (D.Mass. 2001) the court found that the defendant ski manufacturer transacted business with a buyer in Massachusetts for

purposes of § 3(a). Although Radventures was not registered to transact business in Massachusetts, had no sales offices, officers, agents, or bank accounts in Massachusetts, and did not own or lease any real or personal property in the Commonwealth, it had made sales of approximately $12,000 to six Massachusetts residents over the years. The court determined that the minor transaction for the sale of skis to the plaintiff in Massachusetts was part of a larger systematic effort to obtain business from Massachusetts residents such that the foreign defendant was deemed to have transacted business under the long arm statute. Id. at 195.

In the present case, as in the Tatro, Hahn, and Edwards cases, Mr. Contic made purposeful efforts to reach and serve F&M in Massachusetts. Mr. Contic's contacts with Massachusetts were much more than an isolated sale of goods or a single hotel reservation as in the cases discussed above. Rather, Mr. Contic entered a contract and accepted a role with F&M as an independent sales representative, selling F&M's products to customers, and he maintained that role for nearly six years, earning hundreds of thousands of dollars in commissions from F&M. Mr. Contic's purposeful actions as an F&M sales representative is sufficient to constitute "transacting business" within the meaning of G.L. c. 223A, § 3(a). As detailed above, Mr. Contic regularly traveled to Massachusetts and transacted business here. Mr. Contic also maintained regular contact with F&M employees in Massachusetts, communicating at least two to three times a week via telephone and several times a week by email with individuals located in Leominster, Massachusetts.

Mr. Contic's regular and consistent contact with Massachusetts through his role as a F&M sales representative demonstrates that he purposefully maintained an ongoing business relationship with the Commonwealth and actively "participated in the Commonwealth's

economic life" within the meaning of § 3(a).  EMC Corp. v. Smith, No. 952675, 1995 WL 1146186 (Mass.Super. August 16, 1995).

This Court may, therefore, exercise personal jurisdiction over Mr. Contic under the long-arm statute, G.L. c. 223A, § 3(a).

### B. The Defendant Contracted To Supply Services Or Things In Massachusetts.

Mr. Contic's contacts with Massachusetts also confers personal jurisdiction over Mr. Contic under the long-arm statute, G.L. c. 223A, § 3(b) as he clearly contracted with F&M in Massachusetts to supply services in the Commonwealth.  By entering the October 25, 2006 contract with F&M, whereby D&S Sales (Mr. Contic) became an independent sales representative of F&M, Mr. Contic purposefully availed himself of the privilege of conducting activities within Massachusetts, thus invoking the benefits and protections of its laws.

### (ii) The Defendant Has Sufficient Contacts With Massachusetts To Satisfy The Due Process Requirement.

Having determined that the assertion of jurisdiction in this case is authorized by the Massachusetts long-arm statute, this Court must then proceed to the question of whether the assertion of jurisdiction would comport with the requirements of due process.  In this regard, the constitutional inquiry focuses on whether Mr. Contic's contacts with Massachusetts were "such that requiring defendant to defend a lawsuit here would not offend traditional notions of fair play and substantial justice." Bond Leather Co. v. O.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir.1985); see also International Shoe Co. v. Washington, 326 U.S. 310, 319-20 (1945).  Central to this question is whether the defendant "purposefully availed [himself] of the privilege of conducting activities in [Massachusetts], thus invoking the benefits and protection of its laws," i.e., whether Mr. Contic's relationship with F&M was such that he should reasonably anticipate

being haled into court here. American Intern. Rent-A-Car Corp. v. Cross, 709 F.Supp. 272, 277 (D.Mass.1989), citing World Wide Volkswagen Corp. v. Woodson, 494 U.S. 286, 297 (1980).

Mr. Contic's contacts with Massachusetts were not "isolated incidents." Most recently, Mr. Contic's business relationship with F&M in Massachusetts earned him commissions of $174,828 in 2011 and $183,226 in 2012. The facts establish that Mr. Contic purposefully availed himself of the privilege of conducting activities in Massachusetts such that requiring him to defend this lawsuit in Massachusetts would not offend traditional notions of fair play and substantial justice.

**2.  Venue Is Proper In Massachusetts.**

In the alternative, the Defendant asks this Court to transfer venue to Maryland where he resides. The venue of a removed action is governed by 28 U.S.C.A. § 1441(a). JMTR Enterprises, L.L.C. v. Duchin, 42 F. Supp. 2d 87, 99 (D. Mass. 1999). The general removal statute, Section 1441 of Title 28, provides that the venue of a removed case is "the district and division embracing the place where such action is pending." F&M initiated the present action in the Superior Court, Worcester Division, and the Defendant removed the case to the United States District Court for the District of Massachusetts. Accordingly, venue is proper in the District of Massachusetts.

Venue in Massachusetts is also proper under 28 U.S.C.A. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Massachusetts. As discussed above, the events giving rise to the present action are rooted in Mr. Contic's original contract with F&M, a Massachusetts company, and Mr. Contic's role as a sales representative for F&M. The entire action is based on Mr. Contic's position as a former sales representative of F&M, a Massachusetts company. In ruling on a motion to dismiss for lack of venue, the question is not which district is the best venue, or which venue has the most significant connection to the claim.

The question is whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts. <u>Gary Scott Intern., Inc. v. Baroudi</u>, 981 F.Supp. 714, 718 (D.Mass. 1997)(the relevant question regarding venue is whether the district the plaintiff chose has a substantial connection to the claim regardless of whether another forum had greater contacts), citing <u>Setco Enter. Corp. v. Robbins</u>, 19 F.3d 1278, 1281 (8th Cir.1994); <u>Johns v. Newsmax Media, Inc</u>., 2012 WL 3637147 (D.D.C.2012). Here, it cannot be disputed that Massachusetts has a substantial connection to the claim.

Likewise, although not raised in his Motion to Dismiss, the case should not be transferred to the District of Maryland because it is not a more convenient forum. Although a court may transfer a case to a more convenient venue under 28 U.S.C.A. § 1404(a), Maryland is not a more convenient forum than Massachusetts. Federal courts are unanimous in concluding that the defendant bears the burden of persuasion on all elements of the forum non conveniens analysis. <u>Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc</u>., 249 F.Supp.2d 12, 15 (D.Mass. 2002). Mr. Contic cannot meet this burden.

When determining whether to transfer venue, the Court must consider the plaintiff's choice of forum, the convenience of the parties and witnesses, the availability of documents, and the public interest. <u>Boateng v. General Dynamics Corp</u>., 460 F.Supp.2d 270 (D.Mass. 2006); <u>Gulf Oil Corporation v. Gilbert</u>, 330 U.S. 501, 508 (1947). There is a 'substantial presumption' in favor of a plaintiff's chosen forum. <u>S–G Securities v. Fuqua Inv. Co</u>., 466 F.Supp. 1114 (D.Mass.1978), citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947)(holding that, "unless the balance is *strongly in favor* of the defendants, the plaintiff's choice should rarely be disturbed." (emphasis added)). In the present case, none of the factors tip in favor of a transfer to Maryland and, therefore, the Plaintiff's choice of venue should not be disturbed.

None of the factors outlined above favor a transfer of this case to the District of Maryland. First, only Mr. Contic is located in Maryland. F&M, and all of its employees, are located in Massachusetts. All of the potential witnesses in this case are located in Massachusetts, except for Mr. Contic. Fontaine Affidavit, ¶18. The issue in this case is whether Mr. Contic is entitled to indefinitely continue to represent F&M as an independent sales representative in the sale of the F&M's products. The witnesses with knowledge of the contract entered between the parties in 2006, as well as the continuation of the at-will sales representative relationship until June 15, 2012, are F&M employees located in Massachusetts. Fontaine Affidavit, ¶18.

Second, all relevant documents are located in Massachusetts. Fontaine Affidavit, ¶19. All orders placed for Mr. Contic's customer accounts were processed in Massachusetts and, therefore, the related documents are in Massachusetts. Fontaine Affidavit, ¶20. Likewise, Mr. Contic's commission payments were processed in Massachusetts and all back up documentation supporting the commissions paid to Mr. Contic are in Massachusetts as well. Fontaine Affidavit, ¶21. Further, Mr. Contic's customer accounts were national accounts and, therefore, not even his customers are located in Maryland. Moreover, information related to those accounts is located at F&M in Massachusetts. Fontaine Affidavit, ¶22. Finally, Massachusetts has a greater public interest in the resolution of the case than Maryland. The parties' relationship began when Mr. Contic contracted with F&M in Massachusetts to supply services in the Commonwealth. Accordingly, Massachusetts is a more appropriate forum than Maryland for the trial of this case.

As such, venue is proper in the District of Massachusetts and the case should not be transferred to the District of Maryland.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiff, F&M Tool & Plastics, Inc., requests that this Court deny the Defendant's Motion to Dismiss.

F&M TOOL & PLASTICS, INC.

By its attorney,

/s/ Richard C. Van Nostrand
Richard C. Van Nostrand, Esq.
BBO #507900
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive
Suite 400
Westborough, MA 01581-3926
Phone: (508) 860-1453
Fax: (508) 207-9347
Email: rvannostrand@mirickoconnell.com

Dated: December 7, 2012

## CERTIFICATE OF SERVICE

I, Richard C. Van Nostrand, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by U.S. first-class mail.

/s/ Richard C. Van Nostrand
Richard C. Van Nostrand, Esq.

Dated: December 7, 2012