# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| F&M TOOL &PLASTICS, INC., | : CIVIL ACTION NO. 4:12-cv-40134 |
|     Plaintiff | : |
| | : |
| v. | : CIVIL ACTION - LAW |
| | : |
| DENNIS CONTIC d/b/a D&S SALES, | : Jury Trial Demanded |
|     Defendant and Third-Party | : |
|     Plaintiff | : |
| v. | : |
| | : |
| MARK A. GASBARRO, | : |
|     Third-Party Defendant | : |

## ANSWER WITH COUNTERCLAIM

**AND NOW** comes the Defendant and Third-Party Plaintiff, Dennis M. Contic d/b/a D & S Sales, Inc., by and through his undersigned counsel, and avers as follows:

1. **ADMITTED upon information.**

2. **DENIED as stated.** By way of further Answer, Dennis M. Contic, is an adult individual whose primary residence is located in the State of Maryland. Mr. Contic is the owner and president of D & S Sales, Inc., which was incorporated in the Commonwealth of Pennsylvania on December 1, 1997. For the past 14 years, D&S Sales, Inc.'s, main office has been located in the State of Maryland.

3. **DENIED as stated.** By way of further Answer, on October 25, 2006, Plaintiff, operating through CEO Jeffrey Chizmas, offered Mr. Contic a contract to be an independent sales representative for the Plaintiff. On October 30, 2006, Mr. Contic entered into the contract with Plaintiff. Among other terms, the contract specified that Mr. Contic would receive

1

commissions at a rate of 5% of net sales (the standard rate in the industry) on orders shipped from August 1, 2006 to August 1, 2007 "unless specific sell-in accommodations are agreed to, such as reduced commission." (see Exhibit A). The Plaintiff, through its owner, Third-party Defendant, Mark A. Gasbarro, verbally promised Mr. Contic that if he agreed to forego other business opportunities, he would be taken care of. Moreover, Defendant Gasbarro promised Mr. Contic that as long as the Plaintiff corporation was in business, he would be the representative for his accounts. Defendant Gasbarro explained to Mr. Contic that he needed Mr. Contic's business contacts and accounts to be successful. Mr. Contic agreed to forego other business opportunities as requested by the Defendant Gasbarro. On April 24, 2007, Mr. Mike Nichols, the then National Sales manager for Plaintiff, sent Mr. Contic a written amendment to the contract (see Exhibit B) noting that Mr. Contic would be selling Plaintiff's "Smartware" products to certain retailers, and that commissions of 5% would "be paid according to terms" in the October 25, 2006, agreement. Mr. Nichols signed the amendment with the title of "partner."

4.  **DENIED.** By way of further Answer, while the October 25, 2006, agreement specified the time frame of 2006 to 2007, it was the standard in the industry when the agreement was entered into that such agreements would automatically renew each year. This fact is evidenced by the fact that until June 15, 2012, when Plaintiff and Defendant Gasbarro terminated the agreement that they had with Mr. Contic, Mr. Contic, Plaintiff, and Defendant Gasbarro, continued to conduct business with no new written agreement. Essentially, from October 30, 2006, until June 15, 2012, Mr. Contic, Plaintiff, and Defendant Gasbarro continued to operate in a supplier/sales representative relationship.

5.     **ADMITTED in part DENIED in part.** Paragraph 5 is a legal conclusion that pursuant to the applicable rules of civil procedure does not require a response.  Therefore, the allegation is DENIED. In the event that paragraph 5 is deemed to be a statement of fact, the allegation is ADMITTED in part DENIED in part**.** Specifically, it is ADMITTED that after August 1, 2007, the parties continued their relationship.  It is DENIED that the relationship was at-will and terminable by any party at any time.

6.     **DENIED.** By way of further Answer, please see the Answer to paragraph 3, above.

7.     **DENIED as stated.**  By way of further Answer, in the spring of 2012, Plaintiff submitted proposals to alter the contractual relationship between the parties. The proposals, however, would have no impact on the effect of Massachusetts's law on the business relationship between the parties.  In this regard, Mr. Contic has been deprived of profits earned through honest hard work in violation of Massachusetts's law. Mr. Contic is the procuring cause of all of Plaintiff's sales with Mr. Contic's clients, for the Plaintiff and Defendant Gasbarro would never have sold to Mr. Contic's clients had it not been for Mr. Contic's efforts. Therefore, pursuant to the agreements between the parties, Mr. Contic is entitled to a 5% commission on all past, present, and future, net sales for all accounts handled by Mr. Contic.

8.     **ADMITTED in part DENIED in part.** Specifically, it is ADMITTED that this was Plaintiff's stated position.  DENIED that the Plaintiff's stated position is legally correct.  By way of further Answer, please see the response provided for paragraph 7, above.

9. **DENIED as stated.** By way of further Answer, on June 15, 2012, Mr. Contic rejected Plaintiff's request to amend the written agreements (Exhibits A & B) and verbal agreements that were then in existence. DENIED that the Plaintiff's stated position is legally correct. By way of further Answer, please see the response provided for paragraph 7, above.

10. **DENIED as stated.** By way of further Answer, it is specifically DENIED that Mr. Contic "maintains that the parties' relationship is continuing and that he has the right to continue to represent the Plaintiff in the sale of its products apparently for an indefinite period of time." However, Mr. Contic is the procuring cause of all of Plaintiff's sales to Mr. Contic's clients, for the Plaintiff and Defendant Gasbarro would never have sold to Mr. Contic's clients had it not been for Mr. Contic's efforts. Therefore, pursuant to the agreements between the parties, Mr. Contic is entitled to a 5% commission on all past, present, and future, net sales for all accounts handled by Mr. Contic.

11. **DENIED.** By way of further Answer, Plaintiff's claim is without merit it does not state an actual claim or controversy between the parties because Mr. Contic <u>agrees</u> that he is no longer a sales representative for the Plaintiff. Rather, Plaintiff's lawsuit and claim is merely an attempt at forum shopping, in anticipation of the filing of Mr. Contic's claims asserted below. In light of the fact that Plaintiff has failed to assert a viable claim against Mr. Contic, Plaintiff's claim should be dismissed.

12. Paragraph 12 is a legal conclusion that pursuant to the applicable rules of civil procedure does not require a response. Therefore, the allegation is **DENIED**.

## COUNTERCLAIMS

13. Plaintiff, F & M Tool & Plastics, Inc., is a business that was incorporated on August 17, 1995, in the Commonwealth of Massachusetts, with a principal place of business of 163 Pioneer Drive, Leominster, MA 01453. The Plaintiff corporation conducted business with Defendant Contic in the State of Maryland.

14. Defendant and Third-party Plaintiff, Dennis M. Contic, is an adult individual whose primary residence is located in the State of Maryland. Mr. Contic is the owner and president of D & S Sales, Inc., which was incorporated in the Commonwealth of Pennsylvania on December 1, 1997. For the past 14 years, D&S Sales, Inc.'s, main office has been located in the State of Maryland.

15. Third-party Defendant, Mark A. Gasbarro, is an adult individual whose primary residence is located in the Commonwealth of Massachusetts. Defendant Gasbarro is the owner and president of Plaintiff F & M Tool & Plastics, Inc.

16. On October 25, 2006, Plaintiff, operating through CEO Jeffrey Chizmas, offered Mr. Contic a contract to be an independent sales representative for the Plaintiff.

17. On October 30, 2006, Mr. Contic entered into the contract with Plaintiff.

18. Among other terms, the contract specified that Mr. Contic would receive commissions at a rate of 5% of net sales (the standard rate in the industry) on orders shipped from August 1, 2006 to August 1, 2007 "unless specific sell-in accommodations are agreed to, such as reduced commission." (see Exhibit A).

19. The Plaintiff corporation, through its owner, Defendant Gasbarro, verbally

promised Mr. Contic that if he agreed to forego other business opportunities, he would be taken care of and would remain as the company's representative for his accounts.

20. Defendant Gasbarro explained to Mr. Contic that he needed Mr. Contic's business contacts and accounts to be successful.

21. Mr. Contic agreed to forego other business opportunities as requested by the Plaintiff and Defendant Gasbarro.

22. On April 24, 2007, Mr. Mike Nichols, the then National Sales manager for the Plaintiff corporation sent Mr. Contic a written amendment to the contract (see Exhibit B) noting that Mr. Contic would be selling Plaintiff's "Smartware" products to certain retailers, and that commissions of 5% would "be paid according to terms" in the October 25, 2006 agreement.

23. Mr. Nichols signed the amendment with the title of "partner."

24. Neither of these contracts were integrated contracts, meaning they are subject to interpretation and clarification by referring to other writings, agreements, or practices and standards in the industry.

25. While the October 25, 2006, agreement specified the time frame of 2006 to 2007, it was the standard in the industry when the agreement was entered into that such agreements would automatically renew each year.

26. This fact is evidenced by the fact that until June 15, 2012, when the Plaintiff and Defendant Gasbarro terminated the agreement that they had with Mr. Contic, Mr. Contic, Plaintiff, and Defendant Gasbarro, continued to conduct business with no new written agreement.

27. Essentially, from October 30, 2006, until June 15, 2012, Mr. Contic, Plaintiff, and Defendant Gasbarro, continued to operate in a supplier/sales representative employment relationship.

28. Reducing commission percentages to cap a sales representative's earnings is not and never was a standard in the industry and never was a part of the agreement between Mr. Contic, Plaintiff, and Defendant Gasbarro.

29. However, as Mr. Contic sold more of the Plaintiff's products, Plaintiff and Defendant Gasbarro continually decreased the *percentage* of the commissions Mr. Contic received.

30. While reduced commissions were imposed by Plaintiff and Defendant Gasbarro, but not "agreed to" after a bargained for exchange as contemplated and required by the agreement, based upon Defendant Gasbarro's continued verbal promise to take care of Mr. Contic, Mr. Contic continued to perform pursuant to the agreement between the parties.

31. Mr. Contic always believed that Plaintiff and Defendant Gasbarro would eventually make good on their promises and hold up their end of the agreement.

32. Had Mr. Contic known that Plaintiff and Defendant Gasbarro never intended to honor their agreement as defined in the industry, Mr. Contic never would have entered into the agreement.

33. On June 15, 2012, after Mr. Contic refused to enter into a new integrated written agreement with reduced commission rates, Plaintiff and Defendant Gasbarro terminated its relationship with Mr. Contic.

34. As a result of Plaintiff's and Defendant Gasbarro's actions, effective June 15, 2012, it is undisputed that Mr. Contic is no longer permitted to represent Plaintiff in the sale of its products.

35. However, the Defendants' business grew substantially solely because Mr. Contic opened doors to Plaintiff and Defendant Gasbarro and introduced Plaintiff's products to his contacts in the industry of over 30 years.

36. Mr. Contic's stamp of approval on Plaintiff's products is absolutely the procuring cause for the Plaintiff's past, present, and future sales to companies like Lowes, Dollar General, Family Dollar, and Big Lots.

37. Mr. Contic has been deprived of profits earned through honest hard work in violation of Massachusetts's law.

38. Mr. Contic is the procuring cause of all of Plaintiff's and Defendant Gasbarro's sales to Mr. Contic's clients, for Plaintiff and Defendant Gasbarro would never have sold to Mr. Contic's clients had it not been for Mr. Contic's efforts.

39. Therefore, pursuant to the agreements between the parties, Mr. Contic is entitled to a 5% commission on all past, present, and future, net sales for all accounts handled by Mr. Contic.

## **COUNT I**

**Breach of Contract**
**Defendant Contic v. Plaintiff and Defendant Gasbarro**

40. Paragraphs 1-39 are stated herein by reference.

41. Recovery of lost profits due to breach of contract requires a showing (1) that a

breach by a defendant was the cause of the loss; (2) that when the contract was executed, the defendant could have reasonably foreseen that a loss of profits would be a probable result of a breach; and (3) that lost profits can be proved with reasonable certainty.

42. Pursuant to the October 30, 2006 contract, Mr. Contic, Plaintiff, and Defendant Gasbarro had an agreement whereby Mr. Contic would receive commissions at a rate of 5% of net sales.

43. Beginning in 2007, and continuing to the present time, Plaintiff and Defendant Gasbarro unilaterally reduced Mr. Contic's commission rate below 5% in violation of the October 30, 2006, contract.

44. Beginning in 2007, and continuing to the present time, Plaintiff and Defendant Gasbarro were not in compliance with the commission obligation placed upon it as specified in the agreement.

45. Beginning in 2007, and continuing to the present time, Plaintiff and Defendant Gasbarro have breached their agreement with Mr. Contic.

46. The rate of 5% can be proved with reasonable certainty.

47. When the contract was executed in 2006, Plaintiff and Defendant Gasbarro could have reasonably foreseen that Mr. Contic would lose profits if Plaintiff and Defendant Gasbarro breached the contract.

48. Plaintiff's and Defendant Gasbarro's breach of the contract was the cause of Mr. Contic's loss.

49. This breach was material.

50. This breach violated the terms of the agreement between the parties and Mr. Contic's reasonable expectations.

51. This breach violated the standards and practices in the industry.

52. The character of the breach substantially deprived and continues to deprive the Mr. Contic of a benefit that was reasonably expected under the contract.

53. Pursuant to the contract with Plaintiff and Defendant Gasbarro, Mr. Contic is entitled to commissions of 5% on all sales since he entered into his contract with Plaintiff and Defendant Gasbarro.

54. As a result of Plaintiff's and Defendant Gasbarro's breach of contract, Mr. Contic has suffered and will continue to suffer embarrassment, loss of reputation, and financial harm, some or all of which may be permanent.

55. Furthermore, Mr. Contic has incurred attorneys' fees and other costs.

## COUNT II

**Violation of Massachusetts
Wage Payment and Collection Law
and Independent Contractor Statute
Defendant Contic v. Plaintiff and Defendant Gasbarro**

56. Paragraphs 1-55 are stated herein by reference.

57. Plaintiff's and Defendant Gasbarro's actions violate Massachusetts's wage statute, G.L. c. 149, § 148, and independent contractor statute, G.L. c. 149, § 148B (*a*) (1)-(3).

58. Plaintiff and Defendant Gasbarro exercised control and direction over Mr. Contic in connection with the performance of Mr. Contic's services to Plaintiff, both under his contract and in fact.

59. Moreover, the service performed by Mr. Contic was not outside the usual course of Plaintiff's business.

60. Through Plaintiff's and Defendant Gasbarro's mischaracterization of the nature of the employment relationship between Plaintiff and Mr. Contic, Plaintiff likely avoided tax obligations, and failed to pay Mr. Contic proper wages, commissions, and benefits during the course of the employment relationship.

61. Moreover, Mr. Contic is entitled to the 5% commission earned from all sales of which he was the procuring cause.

62. Mr. Contic is the procuring cause of all of Plaintiff's and Defendant Gasbarro's past and future sales with Mr. Contic's clients because Plaintiff and Defendant Gasbarro would never have sold to Mr. Contic's clients had it not been for Mr. Contic's efforts.

63. But for Mr. Contic's efforts and involvement with Mr. Contic's accounts, Plaintiff and Defendant Gasbarro would not have the business or profits that it currently has with these accounts.

64. Therefore, with respect to Mr. Contic's accounts, Mr. Contic continues to be the "procuring cause" of all past, present and future sales, and his right to commissions with respect to these sales, even though Plaintiff and Defendant Gasbarro have terminated the agreement and relationship.

65. As a result of Plaintiff's and Defendant Gasbarro's breach of contract, Mr. Contic has suffered and will continue to suffer embarrassment, loss of reputation, and financial harm, some or all of which may be permanent.

66. Furthermore, Mr. Contic has incurred attorneys' fees and other costs.

## COUNT III

**Unjust Enrichment**
**Defendant Contic v. Plaintiff and Defendant Gasbarro**

67. Paragraphs 1-66 are stated herein by reference.

68. Unjust enrichment occurs when (1) a benefit is conferred upon the defendant by the plaintiff, (2) there is an appreciation or knowledge by the defendant of the benefit; and (3) there is an acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

69. Mr. Contic conferred a substantial benefit on Plaintiff and Defendant Gasbarro by sharing and/or building a network of contacts and personal relationships which made it possible for Plaintiff's and Defendant Gasbarro's products to be sold.

70. Plaintiff and Defendant Gasbarro appreciates this, for it signed Mr. Contic to a contract paying him a commission rate of 5%, and despite unilaterally reducing his commissions, verbally promised to make good on its agreements.

71. Plaintiff and Defendant Gasbarro have inequitably accepted the benefit of being able to use Mr. Contic's relationships and contacts without compensating Mr. Contic accordingly.

72. Moreover, once the door opened to Plaintiff and Defendant Gasbarro and the profits began to flow to Plaintiff and Defendant Gasbarro, Plaintiff and Defendant Gasbarro terminated the agreement and relationship with Mr. Contic.

73. As a result, Plaintiff and Defendant Gasbarro have been unjustly enriched.

74. In order to prevent Plaintiff and Defendant Gasbarro from being unjustly enriched, Plaintiff and Defendant Gasbarro should be required to pay Mr. Contic, as promised, commissions of 5% on all net sales on all of Mr. Contic's accounts since it entered into the agreement with Mr. Contic until the end of time.

75. Mr. Contic seeks to recover past and future commissions to which he is entitled pursuant to the "procuring cause" doctrine.

76. As a result of this unjust enrichment, Mr. Contic has suffered and will continue to suffer embarrassment, lost reputation, and financial harm, some or all of which may be permanent.

77. Furthermore, Mr. Contic has incurred attorneys' fees and other costs.

## COUNT IV

**Breach of the Covenant of**
**Good Faith and Faith Dealing**
**Defendant Contic v. Plaintiff and Defendant Gasbarro**

78. Paragraphs 1-77 are stated herein by reference.

79. Every contract implies good faith and fair dealing between the parties to it.

80. The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.

81. Plaintiff and Defendant Gasbarro did not act in good faith.

82. Plaintiff's and Defendant Gasbarro's actions caused Mr. Contic to suffer financial injury.

83. As a result of the breach of the covenant of good faith and fair dealing, Mr. Contic has suffered and will continue to suffer embarrassment, lost reputation, and financial harm, some or all of which may be permanent.

84. Furthermore, Mr. Contic has incurred attorneys' fees and other costs.

**WHEREFORE**, Defendant, Dennis M. Contic, respectfully requests the following relief:

A. That the Court provide Mr. Contic with a jury trial;

B. That judgment be entered in favor of Mr. Contic and against Plaintiff and Defendant Gasbarro;

C. That the Court declare that Plaintiff's and Defendant Gasbarro's actions violated Mr. Contic's rights under his contract with Plaintiff and Defendant Gasbarro.

D. That the Court award Mr. Contic compensatory damages;

E. That the Court award Mr. Contic treble damages and/or punitive damages.

F. That the Court award Mr. Contic reasonable attorney's fees and costs and interest; and

G. That the Court award such other financial or equitable relief as is reasonable and just.

**BOYLE LITIGATION**

*/s/ Devon M. Jacob*
**Dennis E. Boyle, Esquire**
Supreme Court I.D. No. 49618
**Devon M. Jacob, Esquire**
Supreme Court I.D. No. 89182
4660 Trindle Road, Suite 102
Camp Hill, PA 17011
Phone: (717) 737-2430
Fax: (717) 737-2452
Email: deboyle@boylelitigation.com
dmjacob@boylelitigation.com

Dated: June 25, 2013　　　　　　　　　　Counsel for Defendant Dennis M. Contic

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| F&M TOOL &PLASTICS, INC., | : CIVIL ACTION NO. 4:12-cv-40134 |
|     **Plaintiff** | : |
| | : |
|     v. | : CIVIL ACTION - LAW |
| | : |
| DENNIS CONTIC d/b/a D&S SALES, | : Jury Trial Demanded |
|     **Defendant** | : |
|     v. | : |
| | : |
| MARK A. GASBARRO, | : |
|     **Third-Party Defendant** | : |

### CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email address(es):

Richard C. Van Nostrand, Esquire
rvannostrand@mirickoconnell.com

Louis M. Ciavarra, Esquire
lciavarra@bowditch.com


|  |  |
|---|---|
| | /s/ *Janell B. Badoo* |
| Dated: June 25, 2013 | Janell B. Badoo, Paralegal |